COPY

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

FEB - 5 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                               DEPUTY

| | |
|---|---|
| United States of America, | |
| Plaintiff, | |
| v. | Case No.   SA18-033M |
| Ali Fazeli<br>aka "Seyed Reza Ali Fazeli," | |
| Defendant. | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of beginning in or around May 2016 through May 2017 in the county of Orange in the

Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

LODGED

2018 FEB -5  PM 1:38
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY

/s/
*Complainant's signature*

B. C. Mason, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:

**Jay C. Gandhi**
*Judge's signature*

City and state:   Santa Ana, California

Hon. Jay C. Gandhi
U.S. Magistrate Judge
*Printed name and title*

## A F F I D A V I T

I, B.C. Mason, being duly sworn, hereby declare and state as follows:

### I.   INTRODUCTION

1.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since May of 2003.  Presently, and for the past fourteen years, I have been assigned to a white-collar crime squad and investigated cases related to wire fraud, mail fraud, and securities fraud.  I have also attended conferences regarding white collar and financial crimes, including fraudulent investment schemes and securities fraud.

### II. PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of a criminal complaint and arrest warrant against Ali Fazeli also known as ("aka") Seyed Reza Ali Fazeli ("FAZELI") for a violation of Title 18, United States Code, Section 1343.

3.   The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

1

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

4.    Fazeli solicited millions of dollars from investors, via his company Summit Entertainment Group LLC dba Onlinetickets.com, to purchase tickets to major sporting events with the promise that the tickets would be resold on the secondary market for a profit.  In truth and in fact, a large portion of investor funds were used for the personal benefit of Fazeli, including millions spent at Las Vegas casinos.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

#### A.    <u>TICKET MAN LLC</u>

5.    I reviewed a Verified Complaint of <u>Ticket Man LLC v. Summit Entertainment Group LLC, Ali Fazeli aka Seyed Reza Ali Fazeli, et al.</u>, Case Number A-17-755661-C, filed in the Eighth Judicial District Court of Clark County, Nevada on May 18, 2017 and learned the following:

a.    Around May 2016, Fazeli contacted agents and representatives of Ticket Man to discuss a potential business venture involving the purchase of tickets for Super Bowl LI to be held at NRG Stadium in Houston, Texas from the Harris County Sports & Convention Corporation ("NRG Stadium") for amounts well above face value, and thereafter reselling those tickets for an even higher amount than face value.

b.    Ticket Man provided Fazeli with a draft agreement that Fazeli signed on or about June 3, 2016.  The Ticket Man Agreement provided that Summit and Ticket Man would each pay one-half of the total investment and would split gross profits 50/50 after the deduction of any credit card fees.

c.   Fazeli repeatedly advised Ticket Man that it could expect to receive approximately $3 million in net profit as a result of the venture.

d. ` At Fazeli's request, around June 2016, Ticket Man wired about $2,667,800.00 to a Chase Bank account ending in - 0261, in the name of Summit Entertainment Group, LLC dba onlinetickets.com.

e.   On October 23, 2016, Ticket Man representatives emailed Fazeli to ask how the tickets were selling and to determine when Ticket Man could expect distributions.  Fazeli responded that current sales had slowed because Fazeli increased prices "but the interest & demand are there, corporation[s] just need to start pulling the trigger . . . "

f.   On January 23, 2017, 13 days before Super Bowl LI, Fazeli emailed Ticket Man a price list on letterhead from onlinetickets.com.  The price list claimed that tickets for "Upper Level Corners" were "Sold Out".

g.   Ticket Man received no distributions from the sale of these Super Bowl tickets.

h.   On or about February 20, 2017, about two weeks after Super Bowl LI, Fazeli claimed that he was unable to sell significant numbers of the tickets due to the NFL's purported restrictions on resellers of such tickets.

i.   On April 12, 2017, Fazeli emailed Ticket Man and advised that he had reached a deal to resolve the problems stemming from the NFL's purported intervention.

        j.    Following the April 12, 2017 email, Ticket Man
did not hear further from Fazeli or anyone else at Summit, and
repeated phone calls and emails to Fazeli and Summit were not
returned.

        k.    Nevada Secretary of State filings show that
Summit is an LLC managed by Mitra Malek, who is believed to be
Fazeli's wife.   I believe that Mitra Malek is Fazeli's wife
because in a December 06, 2017 deposition relating to the Ticket
Man civil case, Fazeli admits that Malek is his wife.

    6.    Around August 2017, I interviewed Matthew Gless
("Gless")[1] and learned the following:

        a.    Gless works for Vinnie Smith ("Smith"), an
investor who resides and maintains a "family office" in Orange
County, California.   Gless helps manage a portion of the
hundreds of investments for Smith via the family office.

        b.    Gless was the primary point of contact for Smith
to invest in the Ticket Man transaction.   Smith made this
investment via an entity called Ticket Man LLC.   Ticket Man LLC
was a vehicle created for the purpose for Smith to invest in
this transaction with Fazeli.   Smith signed the June 3, 2015
"2017 NFL Super Bowl 51 Ticket Procurement Project" agreement as
"Manager" of Ticket Man LLC.

---

        [1] Gless was convicted in U.S. District Court for Conspiracy,
Fraud in Connection with the Purchase and Sale of Securities (15
USC 78j(b) and 78ff, 17 Code of Federal Regulations 240.10b-5)
and sentenced to sixty-three months' imprisonment around
December 2008.   The information that he provided has been
corroborated through bank records and other documents.

     c.    Smith and his entities have not received any money back from the Ticket Man investment and Fazeli will not return phone calls or respond to Gless.

     d.    Gless provided me with documents and emails related to the Ticket Man transaction, including:

     i.    An Affidavit of Kevin Hoffman, Executive Director of the Harris County Sports and Convention Corporation ("HCSCC"). Hoffman states that HCSCC operates NRG Park, including NRG Stadium where Super Bowl LI was held on February 5, 2017. HCSCC has never sold tickets for any event held at NRG Stadium to Ali Fazeli, Summit Entertainment Group LLC, or other Fazeli entities.

     ii.    A May 31, 2016, email from Fazeli to Gless Re: Super Bowl where Fazeli writes, in part, "Summit Entertainment Group LLC is my company – we can't buy tickets under OnlineTickets.com."

     iii. An October 23, 2016, email between Fazeli and Smith, cc'd to Gless re: "How are the super bowl tickets selling. When will we some distributions to us. Vinny" where Fazeli writes, "With The [sic] Cowboys and the patriots [sic] doing so well this season, I have increased the ticket prices to maximize profits with the anticipation of (hopefully) one or both those teams making it into the Super Bowl. That has slowed down current sales but the interest & demand are there, corporation [sic] just need to start pulling the trigger. I will keep you guys posted."

iv. A UBS account statement showing a wire from an account in the name of Ticket Man LLC payable to Summit Entertainment Group, LLC dba onlinetickets.com, at JPMorgan Chase Bank, account ending in -0261, dated June 7, 2016 in the amount of $1,012,728.74. The statement lists Ticket Man LLC located at 2560 East Chapman Ave., #173, Orange, CA 92869-3205.

v. A UBS Account Statement showing a wire from an account in the name of Ticket Man LLC payable to Summit Entertainment Group, LLC dba onlinetickets.com, at JPMorgan Chase Bank, account ending in -0261, dated July 22, 2016 in the amount of $1,333,900.00. The statement lists Ticket Man LLC located at 2560 East Chapman Ave., #173, Orange, CA 92869-3205.

7. Marty Sprong is a CPA in Irvine, California and is involved with accounting for Smith's investments. Sprong provided the following explanation regarding the sending of the two UBS wires from Ticket Man LLC to Summit Entertainment Group:

a. The Ticket Man account was opened in April 2015 with the former UBS representatives out of the Los Angeles office. Ticket Man's account continues to be serviced by UBS, but out of the Orange County office under new representation. Accounts are opened typically by making a phone call to the UBS representatives and documents are provided to Sprong to obtain Smith's signature as the signer on the account. Sprong sent the wire requests for the investments via email with the UBS Orange County office in 2016.

B.    SEMBLER TRUST

8.    On August 31, 2017, I interviewed attorney R.J. Haughey II and learned the following:

        a.    HAUGHEY represents the Sembler Provision Fund Generation Skipping Trust #4 in a lawsuit against Fazeli, and Summit Entertainment Group LLC.  The trustee for the trust is attorney Julie V. Fanelli.

        b.    Members of the Sembler family purchased tickets on the secondary market, for personal use, through FAZELI in the past and met FAZELI in Las Vegas related to these transactions.

        c.    The trust invested about $5 million in total with FAZELI to purchase tickets to various events, including the 2016 NCAA Final Four, 2017 Super Bowl, and 2018 FIFA World Cup.  The trust received some funds back from its initial NCAA investment, but received nothing back from the Super Bowl and World Cup investment.

9.    I reviewed a Complaint filed in the Circuit Court of the Thirteenth Judicial Circuit In and For Hillsborough County, Florida Civil Division in the matter of Julie V. Fanelli as Trustee for the Sembler Provision Fund Generation Skipping Trust #4 v. Summit Entertainment Group LLC dba Online Tickets and Seyed Reza Ali Fazeli, aka Ali Fazeli, and learned the following:

        a.    Based upon Fazeli's representations regarding his and Summit's tract record of success in deriving profits from individually reselling tickets that Summit would purchase in large blocks for various major sporting events, the Trust

7

invested funds with Summit in exchange for a series of Promissory Notes that set the terms of repayment of the principal investment and the Trust's return on the investment.

b. The Trust invested $673,150 in a block of tickets to the 2016 NCAA Final Four basketball tournament under a promissory note dated June 17, 2015.

c. Thereafter, Fazeli reported to the Trust that ticket sales from the NCAA Final Four Tournament had been successful and Fazeli claimed that additional higher returns would be obtained by rolling a substantial portion of the amounts due into a second investment in the resale of tickets to the 2017 NFL Super Bowl.

d. The Trust agreed and made the investment in the 2017 NFL Super Bowl as evidenced by a Promissory Note dated May 23, 2016 ("Super Bowl Note").

e. As stated in the Super Bowl Note, the loan proceeds were to comprise one third of the total funds to be used by Summit and Fazeli for the purchase of 2017 NFL Super Bowl tickets from the Harris County Sports and Convention Center – NRG Stadium, and for no other purpose.

f. Prior to the 2017 NFL Super Bowl, and prior to repayment of the Super Bowl Note, Fazeli notified the Trust of another investment opportunity. Fazeli indicated that he had an opportunity to buy large blocks of tickets to the 2018 FIFA World Cup and other Oceania Football Confederation, Inc. events.

g. Fazeli represented that Summit had entered into a 2018 FIFA World Cup Ticket and Travel Partner Agreement and

Sponsorship Agreement with Oceania Football Confederation in furtherance of the endeavor.

      h.   The Trust agreed to invest in the venture and entered into a Promissory Note dated November 25, 2016 ("World Cup Note") in the principal amount of $3.2 million.

      i.   Like the Super Bowl Note, the World Cup Note provided that: "the loan proceeds shall comprise 1/3 of the total funds used by Maker for the payment due by Summit pursuant to the [Agreement], and for no other purpose."

      j.   Pursuant to the World Cup Note, payments were due to the Trust on or before January 10, 2017 in the sum of $425,000.

      k.   The Trust has not received any returns on this investment.

      l.   Representatives of the Trust have attempted to contact Summit and Fazeli for accountings since February 2017 and have not received any substantive response.

      m.   The complaint attaches a copy of the World Cup Note and it is signed on November 25, 2016, on behalf of Summit by Mitra Malek and Seyed Reyza Ali Fazeli.

     10. I reviewed documents later provided to me by Fanelli, that included:

      a.   A May 23, 2016, email string re: "Wire Info" where Fazeli instructs Amy Miller, to send Mark Sembler wiring instructions.  Miller then provides a Chase Bank account ending in -0261 for Onlinetickets.com.

b.   An November 25, 2016 email from Fazeli re: "World Cup Spreadsheet" that states in part, "Attached is the executed and notarized copy of the promissory note for the World Cup transaction . . . The notary made me hand write in my complete name as written on my driver's license . . ."

c.   A June 17, 2015, email from Fazeli to Mark Sembler re: Online Tickets, that states in part,

"We can run it through my Vegas operation – it [sic] the same either way for me.  I have the LLC in Vegas under my wife's name as well to take advantage of the minority ownership through the casinos . . .  Only change is the account number at Chase which I have enclosed a voided check.  Summit Entertainment Group, LLC dba onlinetickets.com.  Responsible party – Ali Fazeli."

The email also contains a signature line for Fazeli that lists Fazeli as the "Founder & President" of Onlinetickets.com.

d.   A Super Bowl 51 Price List on OnlineTickets.com letterhead, listing the "Upper Level Corners" as "Sold Out".

e.   A "Wire Authorization" for $689,877.60 directing funds from the Trust to the Chase -0261 account, signed by Fanelli and dated May 24, 2016.  Fanelli advised that this wire transfer was to fund the ticket investment and the trust understood the money would be used for the purchase of Super Bowl tickets by Fazeli.

f.   A "Wire Authorization" for $889,266.66 directing funds from the Trust to the Chase-0261 account, signed by

Fanelli and dated June 22, 2016.  Fanelli advised that this wire transfer was to fund the ticket investment and the trust understood the money would be used for the purchase of Super Bowl tickets by Fazeli.

### C.   BANK ANALYSIS

11. I reviewed records from Chase Bank and learned the following:

a.   Chase Bank account ending in -0261 ("The -0261 account") is held in the name Summit Entertainment Group LLC DBA Pacetickets.com or Online Tickets and lists a business address in Las Vegas, Nevada.  The signatory on the account is listed as Mitra Malek with the title of "Manager."  Seyed R. Fazeli was added as a signatory on the account around April 1, 2016.

b.   Chase Bank account ending in -8308 is in the name of Summit Entertainment Group LLC DBA Pacetickets.com or Online Tickets.  The signatory on the account is listed as Mitra Malek with the title of "Manager."  Fazeli was added as a signatory to this account around April 1, 2016.

c.   The account statements for the Chase -0261 account show the following incoming wires:

i.   A June 07, 2016 wire from the UBS account of Ticket Man LLC in the amount of $1,012,728.74.

ii.   A July 22, 2016 wire from the UBS account of Ticket Man LLC in the amount of $1,333,900.00.

       iii.   A May 24, 2016 wire from the Sembler
            Provision Fund in the amount of $689,877.60.

       iv.   A June 29, 2016 wire from the Sembler
            Provision Fund in the amount of $889,266.66.

       v.  A November 29, 2016 wire from the Sembler
            Provision Fund for $1,150,000

12. I believe that there was an interstate wire used in the transactions above because based on my training and experience, a wire that is sent from an account in California to an account in Nevada travels interstate and is also processed outside of California.

13. I conducted a preliminary bank analysis of the -0261 and -8308 accounts for May 2016 through August 2016 and learned the following:

    a.   The beginning balance for the Chase -0261 May 2016 statement is about $1,981.20. The beginning balance for the Chase -8308 statement is about $1,936.68.

    b.   About $4.1 million is deposited to the -0261 and -8308 accounts. $3.9 million of the $4.1 million deposited is from Ticketman LLC and the Sembler Provision Trust.

    c.   Approximately $2 million of the $4.1 million is transferred to Las Vegas casinos via Cashier's Check: about $1.8 million to the Aria Casino and $180,000 to the Bellagio Casino.

    d.   Approximately $40,000 is withdrawn via ATM withdrawals.

e.      Approximately $228,000 is paid for credit card payments.

f.      Approximately $150,000 is written in checks payable to Mitra Malek.

g.      Approximately $36,000 is paid to the Flooring Boutique.

h.      $100,000 is paid to David Garden via Cashier's Check with "Poker Loss" handwritten in the memo section of the Cashier's Check.

i.      $50,000 is paid to Chris King via Cashier's Check with "Full & Final Settlement Case #2015-4572" handwritten in the memo section of the Cashier's Check.

14. I reviewed a Complaint filed on October 12, 2017 in the District Court of Clark County, Nevada in the matter of Seidel, Juanda, and Clark v. Summit Entertainment Group LLC dba Online Tickets, Ali Fazeli, et al. and learned that the Complaint alleges:

a.      Beginning no later than December 2015, Summit and Fazeli represented to Plaintiffs that they were entering into an agreement with the Harris County-Houston Sports Authority ("HCHSA") for the purchase of $10 million in tickets for the 2017 NFL Super Bowl. Fazeli represented that $10 million would purchase 2,800 tickets. Summit and Fazeli told Plaintiffs that they would resell the purchased 2017 NFL Super Bowl Tickets for a profit on www.onlinetickets.com.

13

b. On or about December 15, 2016, Fazeli provided wire instructions to Plaintiffs for Summit. Fazeli also provided Plaintiffs with proposed promissory notes.

c. The three Plaintiffs provided Summit and Fazeli about $1.3 million combined for the express purpose of purchasing 2017 NFL Super Bowl Tickets ($500,000 from Seidel, $300,000 from Juanda, and $500,000 from Clark). Summit and Fazeli executed a promissory note requiring payment to the Plaintiffs by March 5, 2017. Summit and Fazeli failed to make any payments on the Promissory Notes.

d. On January 31, 2017, Fazeli represented that Summit had in fact purchased 2017 Super Bowl tickets with Plaintiffs' funds. Fazeli stated that "sales have been very sluggish" due to a lack of support and that he was working "with the Supplier to return all or a portion of the [Super Bowl Tickets]."

e. Fazeli later claimed that Fazeli had all the Super Bowl tickets and was attempting to return all 2,800 tickets back in exchange for $10 million.

f. By February 15, 2017, Fazeli claimed that he had not received the refund from the ticket supplier due to tornadoes in Houston.

g. On May 24, 2017, Fazeli claimed that he would return Plaintiffs' investments after Memorial Day. However, by June 6, 2017, Fazeli claimed that "none" of his deals had materialized and that he was instead going to attempt to win back their money playing poker.

h.    Attached to the Complaint are three Promissory Notes in favor of the Plaintiffs, dated January 18, 2017, signed by Ali Fazeli individually and as the President of Summit Entertainment Group LLC dba Online Tickets.  The Promissory Notes state in part that Plaintiffs' principal will "be used for the sole and absolute purpose of capitalizing part of the $10,000,000 purchase price" of the Super Bowl tickets.

15.  I reviewed casino records from the Aria and Bellagio Casino ("the casinos") and learned:

a.    In late 2016 and early 2017, Fazeli presented about $1.5 million in not sufficient funds ("NSF") checks to the casinos and obtained about $1.5 million in casino markers.  The casinos subsequently filed a criminal complaint against Fazeli in Nevada for the loss.

b.    Fazeli accrued large gambling losses including $2.4 million in 2016 and $648,000 in 2015.

c.    Fazeli participated in multiple "High Roller" poker tournaments at the Aria Casino from 2015 through 2016 with typical Buy-In Amounts of $25,000.

16.  I reviewed a civil lawsuit filed in the District Court of Harris County, Texas in the matter of Lehne v. Ali Fazeli aka Seyed Fazeli, and Ali Davoudi on about July 7, 2017.  The Complaint alleges that Lehne entered into an agreement with Fazeli and Davoudi to purchase tickets for the 2017 Super Bowl in Houston, Texas and then resell the tickets at a profit. Lehne advanced $500,000 to Fazeli and Davoudi to facilitate the purchase of the tickets.  Lehne has not received any money back

from the investment.   Also attached is a Ticket Purchase
Agreement, dated March 21, 2016, that is signed by Fazeli and
Davoudi.

17. I reviewed a similar lawsuit filed by the <u>Techcess</u>
<u>Group LP v. Ali Fazeli, Ali</u> Davoudi, and Onlinetickets.com.
Techcess agreed to advance $200,000 to Fazeli and Davoudi to
purchase tickets to the 2017 Super Bowl in Houston, Texas.   They
allege they never received any money back.

### V.   CONCLUSION

18. For all the reasons described above, there is probable
cause to believe that Ali Fazeli has committed (1) a violation
of Title 18, United States Code, Section 1343.


/S/
_____
B.C. MASON
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Subscribed to and sworn
before me this   5   day of
February 2018.

### Jay C. Gandhi
_____
HONORABLE   JAY C. GANDHI
UNITED STATES MAGISTRATE JUDGE


16